# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                          NEWS RELEASE #005

FROM: CLERK OF SUPREME COURT OF LOUISIANA


The Opinions handed down on the **27th day of January, 2016**, are as follows:


**BY CLARK, J.**:


2014-K -2260        STATE    OF    LOUISIANA    v.    VERNON    MULLINS    (Parish    of
   C/W               Sabine)(Aggravated Rape)
2014-KO-2310
                    Accordingly,    we    reverse    the    decisions    below,    vacate    the
                    Defendant's conviction and sentence, and remand this case to the
                    District Court for a new trial.
                    REVERSED.  CONVICTION  AND  SENTENCE  VACATED.  REMANDED  FOR  NEW
                    TRIAL.

                    WEIMER, J., concurs in the result and assigns reasons.
                    GUIDRY, J., dissents and assigns reasons.
                    CRICHTON, J., concurs in the result and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2014-K-2260

CONSOLIDATED WITH

NO. 2014-KO-2310

STATE OF LOUISIANA

VERSUS

VERNON MULLINS

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF SABINE

Clark, Justice

We granted certiorari in this criminal matter to determine whether the lower courts erred in allowing certain expert psychological testimony as to the victim's intelligence quotient (IQ) and in admitting into evidence a letter written by the expert which contained hearsay evidence. For the reasons following, we have determined that the lower courts did, indeed, err, and remand the case to the trial court for retrial.

**Facts and Procedural History**

Vernon Mullins (Defendant) was indicted on November 14, 2011, for the aggravated rape of J.W., in violation of La. R.S. 14:42. The State alleged that, between the dates of August 2010 and August 2011, Defendant engaged in sexual intercourse with J.W., who was prevented from resisting or consenting because she suffers from a mental infirmity due to an IQ of seventy or below. Defendant's trial in the Eleventh Judicial District Court, Parish of Sabine, began on September 4, 2013, and the jury returned a guilty verdict on September 6, 2013. He was sentenced on December 2, 2013, to life imprisonment without benefit of probation, parole, or suspension of sentence. The Court of Appeal, Third Circuit, affirmed

1

Defendant's conviction on October 1, 2014. *State v. Mullins*, 14-260 (La.App. 3 Cir. 10/1/14), 2014 WL 4926162 (unpubl'd). This Court granted Defendant's writ applications in *State v. Mullins*, 14-2260 (La. 10/2/15), ___ So.3d ___ and *State v. Mullins*, 14-2310 (La. 10/2/15), ___ So.3d ___ .

## Discussion

Defendant makes four assignments of error, three of which are interrelated. He argues that allowing Dr. Mark Vigen, the State's expert psychologist, to present evidence as to the results of IQ testing he did not administer or score violated the Confrontation Clause of the United States Constitution. Next, Defendant argues that the lower courts erred in allowing hearsay testimony and the introduction into evidence of a letter Dr. Vigen prepared in advance of trial, both of which were based on information gained from persons who did not testify. Next, Defendant argues that the lower courts erred in allowing the introduction of Dr. Vigen's letter, where the letter contained hearsay, not subject to any exception. Finally, Defendant alleges that the court of appeal erred in failing to find that the trial court had erred in allowing expert testimony where the State failed to comply with Article 705(B) of the Code of Evidence.

As this matter implicates the Confrontation Clause of the Sixth Amendment of the United States Constitution, our review is de novo.

Defendant was convicted of aggravated rape. The controlling statute provides, in pertinent part:

> A. Aggravated rape is a rape . . . where the . . . sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one of the following circumstances:
>
> (6) When the victim is prevented from resisting the act because the victim suffers from a physical or mental infirmity preventing such resistance.
>
> * * *
>
> C. For the purposes of this Section, the following words have the following meanings:
>
> * * *

2

(2) "Mental infirmity" means a person with an intelligence quotient of seventy or lower.

La. R.S. 14:42. The victim's IQ, then, is an essential element of the crime.

We begin by examining Dr. Vigen's testimony. He testified on direct examination as to the victim's IQ score, which, based on the results of the victim's IQ testing, he opined was sixty-three, below the score of seventy which the statute makes the minimum IQ required for consent. He further testified on direct examination as to when the IQ test was performed, how the test was performed, what the test was designed to measure, how the test measures a subject's aptitude versus the aptitude of others, and how the IQ score was derived. Dr. Vigen also revealed that he interviewed the victim before and after the test was administered, but that he had not personally administered or scored the test.

At the close of Dr. Vigen's direct examination, the State offered into evidence a letter authored by Dr. Vigen which contained the results of the IQ test administered to J.W. Defendant's counsel objected, reasoning that he had not had the opportunity to cross examine the doctor about the contents of the letter. The trial court sustained the objection "for now," and allowed Defendant's counsel to cross examine Dr. Vigen about the contents of the letter.

Cross examination revealed that Jeri Jones, who was not present in court, had administered and scored the test, and that another technician, Tabitha Rawls, also not in court, had re-checked the scores. Dr. Vigen, still on cross examination, explained the standard deviation of the test and the margin of error for the test. He explained that the margin of error was plus or minus five points, so that the victim's actual IQ, with a ninety-five percent reliability, was between fifty-eight and sixty-eight.

At the conclusion of Defendant's cross examination of Dr. Vigen, the State again offered the letter into evidence. Defendant's counsel again objected, first

3

arguing that the letter was not the best evidence of the victim's IQ, that the letter contained hearsay, and that the person who administered the test was not present in court to testify about the test. The trial court overruled the objection and allowed the letter to be introduced into evidence. Dr. Vigen did not testify further.

The United States Supreme Court has explained that the Confrontation Clause applies to "testimonial" statements. In *Crawford v. Washington*, the Court unanimously determined that the recorded statement of the defendant's wife, which suggested the defendant had not acted in self-defense, was barred from admission because it was "testimonial" under any definition. The Court stated:

> Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of "testimonial." Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.

*Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374, 158 L. Ed. 2d 177 (2004).

The Court later addressed the definition of testimonial statement in the consolidated cases of *Davis v. Washington* and *Hammon v. Indiana*. In *Davis*, the defendant's girlfriend had called 911 to report that he was assaulting her. In *Hammon*, officers questioned the defendant and his wife in separate rooms after having been summoned after a report of domestic abuse. The Court unanimously found that the 911 call made in *Davis*, which was made for the primary purpose of seeking help during an ongoing emergency, was not testimonial, *Davis v. Washington*, 547 U.S. 813, 828, 126 S. Ct. 2266, 2277, 165 L. Ed. 2d 224 (2006), while in *Hammon*, with one dissent, the Court found the statement to be testimonial, as the statement was made as part of an investigation into possible criminal past conduct and there was no emergency in progress. *Davis*, 547 U.S. at

829, 126 S. Ct. at 2278. The dissent would have found the statement in *Hammon* admissible, as it was adduced during an informal questioning by police rather than in a formalized process. *Davis*, 547 U.S. at 836, 126 S. Ct. at 2282 (Thomas, J., dissenting).

The Supreme Court again addressed testimonial statements in *Michigan v. Bryant*, 562 U.S. 344, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011), where, in a second degree murder trial, the victim's statement to police, who had discovered him lying mortally wounded in a gas station parking lot, was admitted. The statement described the shooter and the location of the shooting. The Michigan Supreme Court reversed, finding the statement was testimonial under *Davis*, in that its primary purpose was to establish the facts of an event which had already occurred, rather than to meet an ongoing emergency. A divided U.S. Supreme Court reversed, finding that the statement was not testimonial because its primary purpose was to help resolve the ongoing emergency of an unknown shooter who was at large. *Bryant*, 562 U.S. at 1158, 131 S.Ct. at 363-64. Two justices dissented, because, from the victim's point of view, the emergency had already ended and the statements had little value other than to ensure the arrest and prosecution of the shooter. *Bryant*, 562 U.S. at 1170, 131 S.Ct. at 384 (Scalia, J., dissenting, joined by Ginsburg, J). One justice concurred, again finding that the primary-purpose test should be rejected in favor of an inquiry into whether the statement was formal and solemn. *Bryant*, 562 U.S. at 378-79, 131 S.Ct. at 1167-68 (Thomas, J., dissenting).

In the context of laboratory analysis and expert testimony, the Supreme Court has issued a series of opinions which offer several rationales. In the plurality opinion, *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), four justices held that certificates verifying that bags of powder were cocaine were testimonial because they were created for the primary

5

purpose of providing evidence at trial. *Melendez-Diaz*, 557 U.S. at 310-11, 129 S.Ct. at 2531-32. Further, the opinion held that where analysts' affidavits included testimonial statements, defendants were entitled to be confronted with the analysts themselves. *Melendez-Diaz*, 557 U.S. at 311, 129 S.Ct. at 2532. One justice concurred because, in his view, the affidavits were testimonial due to their formal nature. *Melendez-Diaz*, 557 U.S. at 329-30, 129 S.Ct. at 2543 (Thomas, J., concurring). Four justices dissented, stating that the laboratory technicians who produced the certificates were not witnesses against the defendant because they did not have personal knowledge of some aspect of the defendant's guilt. *Melendez-Diaz*, 557 U.S. at 343-44, 129 S.Ct. at 2551.

In *Bullcoming v. New Mexico*, 564 U.S. ___, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), five justices found that a formal laboratory certificate identifying a defendant's blood alcohol level was testimonial and, therefore, not admissible without the testimony of the analyst who had conducted the testing, because it was created for the purpose of aiding in a police investigation. The opinion further held that the testimony of another analyst familiar with the procedures was not enough to establish admissibility.

In *Williams v. Illinois*, 547 U.S. ___, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012), yet another plurality opinion, four justices determined that the Confrontation Clause was not violated when the state's DNA expert testified on the basis of a report by another DNA expert who did not appear at trial that the DNA profile of a blood sample taken from the defendant matched the DNA profile taken from biological traces found on the victim of a sexual assault. The opinion offered two reasons for their finding. First, the expert's reliance on the report was not offered to prove the truth of the matter asserted because the results of the DNA test were relayed by the expert solely for the purpose of explaining the assumptions on which his opinion rested, and, second, the DNA profile was produced before the

defendant was identified as a suspect and was not inherently inculpatory. *Williams*, 547 U.S. at ___, 132 S.Ct. at 2228. Again, one justice concurred because the report lacked the solemnity required of testamentary evidence. *Williams*, 547 U.S. at ___, 132 S.Ct. at 2260 (Thomas, J., concurring). The remaining four justices found that it was "open-and-shut" that when the state prosecuted the defendant for rape based in part on the DNA profile at issue, that the defendant should have the opportunity to cross-examine the witness who produced the evidence against him. *Williams*, 547 U.S. at ___, 132 S.Ct. at 2265.

In sum, United States Supreme Court jurisprudence tells us that testimonial evidence includes prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. *Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374. We also know that statements made for the primary purpose of seeking help during an ongoing emergency are not testimonial, *Davis*, 547 U.S. at 828, 126 S. Ct. at 2277; *Bryant*, 562 U.S. at 1158, 131 S.Ct. at 363-64, while statements made as part of an investigation into possible criminal past conduct with no emergency in progress are testimonial. *Davis*, 547 U.S. at 829, 126 S. Ct. at 2278. Testimonial statements include those "solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator." *Davis*, 547 U.S. at 826, 126 S. Ct. at 2276. When laboratory analysts' affidavits include testimonial statements, a defendant is entitled to confront the analysts themselves. *Melendez-Diaz*, 557 U.S. at 311, 129 S.Ct. at 2532. A document created solely for an "evidentiary purpose," made in aid of a police investigation, is testimonial. *Bullcoming*, 564 U.S. at ___, 131 S. Ct. at 2717.

Here, the State's expert, Dr. Vigen, testified as to the results of an IQ test he did not personally administer. The IQ test was administered to the victim by a technician in order to provide evidence at trial of the victim's "mental infirmity," i.e., that she had an "intelligence quotient of seventy or below," which is an

essential element of the crime of aggravated rape. The technician who administered the test did not testify in court as to the results of the test, or to whether the required testing protocol was followed. Based on these facts, under the admittedly murky rules laid out by the United States Supreme Court, the results of the IQ test are clearly testimonial in nature.

Were the argument to be made that Dr. Vigen's reliance on the test results was not offered to prove the truth of the matter asserted, but only to explain the assumptions upon which his opinion was based, as was the case in *Williams*, the argument would fail for several reasons. First, in response to a question asking for the victim's IQ score as indicated by the IQ test, Dr. Vigen stated, "Sixty-three." There was no premise in the prosecutor's question, as there was in *Williams*. Next, as the *Williams* plurality admitted, in the event of a jury trial, as was the case here, without "an evaluation of the risk of juror confusion and careful jury instructions, the testimony could not have gone to the jury." *Williams*, 547 U.S. at ___, 132 S.Ct. at 2236. Finally, this Court has stated that the *Williams* holding is no more broad "than the particular circumstances that led to the convergence of the votes of five Justices to uphold the judgment of the Illinois appellate courts . . ." *State v. Bolden*, 2011-2435 (La. 10/26/12), 108 So. 3d 1159, 1161. Those circumstances include the testing having been conducted before the defendant was identified or targeted as a suspect. *Bolden*, 108 So. 3d at 1162. Here, the testing was done after Defendant was identified and its primary purpose was to provide evidence at Defendant's trial.

Although the results of the IQ test were testimonial in nature and, therefore, inadmissible without the testimony of the technician who administered and graded the test, Defendant failed to object to any aspect of Dr. Vigen's testimony. Louisiana's contemporaneous objection rule provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of

8

occurrence." *State v. Ruiz*, 2006-1755 (La. 4/11/07), 955 So. 2d 81, 87; La.Code Crim. Pro. art. 841 A. Because Defendant failed to contemporaneously object to Dr. Vigen's testimony as to the victim's IQ score, Defendant failed to preserve any error as to his testimony, whether as to hearsay or to confrontation.

The same cannot be said, though, of the introduction of Dr. Vigen's letter containing the results of the IQ test. Defendant objected to the introduction of the letter both for its hearsay nature and because the people who administered and graded the test were not in court to testify, which fairly raises the Confrontation Clause issue.

As we discussed above, because the letter contains the results of the testing, the primary purpose of which was to provide evidence of the victim's IQ, an essential element of the crime, the letter contained a testimonial statement. Because the person making the statement was not present in court to testify as to the overall IQ score, the sub-test scores, and whether the test was conducted under the proper protocol and conditions, the trial court erred in allowing the testimonial statement to be introduced into evidence. As the Supreme Court has stated, "That alone is sufficient to make out a violation of the Sixth Amendment. . . . Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford*, 541 U.S. at 68-69, 124 S. Ct. at 1374.

Confrontation Clause violations do not fit within the limited category of constitutional errors that are deemed prejudicial in every case - the violation of a defendant's right to confrontation may be harmless error. *Delaware v. Van Arsdall*, 475 U.S. 673, 682, 106 S. Ct. 1431, 1437, 89 L. Ed. 2d 674 (1986); *State v. Welch*, 1999-1283 (La. 4/11/00), 760 So. 2d 317, 321-22. Courts analyze such errors by assuming that the damaging potential of the error was fully realized, then asking whether the reviewing court could conclude that the error was nevertheless

9

harmless beyond a reasonable doubt. *Welch*, 760 So.2d at 321-22. The factors to be considered in determining whether the error was harmless include the importance of the testimony of the witness in the state's case, whether the testimony is cumulative, the presence or absence of evidence corroborating or contradicting the testimony, the extent of the cross-examination permitted, and the overall strength of the state's case. *Welch*, 760 So.2d at 321-22.

Here, the importance of the evidence of the test results cannot be overstated. The results of the test contained in the letter provided the sole basis for the finding of the victim's IQ, which established an essential element of the crime. Further, the results of the test cannot be said to be merely "cumulative" of the expert's testimony. Dr. Vigen testified that the victim's IQ was "Sixty-three." The letter, on the other hand, contained not only the victim's overall IQ, but also the scores of all the sub-tests, and gave the jury a basis for believing that Dr. Vigen's testimony was credible. Finally, the defense was not able to cross-examine the "declarant" at all, as she was not present at trial, and "questioning one witness about another's testimonial statements [does not] provide[] a fair enough opportunity for cross-examination. *Bullcoming*, 564 U.S. at ___, 131 S.Ct. at 2716. As a result, such a violation cannot be held to be harmless beyond a reasonable doubt in this case, because it resulted in the admission of the primary evidence proving an essential element of the crime, and we cannot say "the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *State v. Code*, 627 So. 2d 1373, 1384-85 (La. 1993) (citing *Sullivan v. Louisiana,* 508 U.S. 275, ___, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993) (emphasis in original)).

The State argues that experts such as Dr. Vigen are allowed to testify as to their opinion based upon data provided to the expert which may or may not be admissible into evidence. Nothing in Dr. Vigen's testimony indicates, however, that he used anything other than the IQ test results to form his "opinion" as to the

victim's IQ. When an expert merely repeats or summarizes the content of hearsay, his testimony cannot reasonably be considered an "opinion," as it operates as little more than circumvention of the hearsay rules. *See, e.g., United States v. Pablo*, 696 F.3d 1280, 1288 (10th Cir. 2012) ("If an expert simply parrots another individual's out-of-court statement, rather than conveying an independent judgment that only incidentally discloses the statement to assist the jury in evaluating the expert's opinion, then the expert . . . thereby becomes little more than a backdoor conduit for an otherwise inadmissible statement.").

The letter also contained hearsay statements. "'Hearsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. Code Evid. art. 801 C. Here, the letter is a statement made by Dr. Vigen prior to his testimony in court, and was offered to provide evidence of the victim's IQ. As such, it is hearsay. Further, although Dr. Vigen may have authored and signed the letter, he had no personal knowledge of the test and sub-test scores. He obtained these scores from the technician who conducted and graded the test. The declarant of the test scores was the technician, not Dr. Vigen. The letter, which was itself hearsay, contained hearsay information obtained from a declarant, the technician, who was not available to testify in court. Hearsay within hearsay is admissible only if each part of a combined statement conforms with an exception to the hearsay rule. La. Code Evid. art. 801. No exception applies to either level of hearsay in the letter. Because the letter, itself, was hearsay, and it contained the hearsay statement of a technician who did not testify at trial, the trial court erred in allowing its introduction into evidence.

Defendant's last assignment of error is that trial court erred in allowing expert testimony where the State failed to comply with Article 705(B) of the Code of Evidence. Article 705(B) reads: "In a criminal case, every expert witness must

11

state the facts upon which his opinion is based, provided, however, that with respect to evidence which would otherwise be inadmissible, such basis shall only be elicited on cross-examination."

As we have previously noted, Defendant did not make any objection to any of Dr. Vigen's testimony. Because Defendant did not make a contemporaneous objection, he again failed to preserve any error as to Dr. Vigen's testimony which may have violated Article 705B.

**Conclusion**

We find that the letter containing the IQ test results and introduced by the State for the primary purpose of proving an essential element of the crime of aggravated rape contains testimonial statements and therefore is subject to Confrontation Clause requirements. As a result, the trial court violated Mr. Mullins' Sixth Amendment rights by ruling the letter could be admitted into evidence without testimony. We further find the introduction of the letter violated the hearsay rule. Accordingly, we reverse the decisions below, vacate Defendant's conviction and sentence, and remand this case to the District Court for a new trial.

**REVERSED. CONVICTION AND SENTENCE VACATED. REMANDED FOR NEW TRIAL.**

12

01/27/2016

# SUPREME COURT OF LOUISIANA

## NO. 2014-K-2260

## CONSOLIDATED WITH

## NO. 2014-KO-2310

## STATE OF LOUISIANA

## VERSUS

## VERNON MULLINS

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,*
*THIRD CIRCUIT, PARISH OF SABINE*

**WEIMER, J.**, concurring in the result.

I agree with the majority's conclusion that the letter reciting the victim's IQ test results, introduced by the State for the purpose of proving an essential element of the crime of aggravated rape, is testimonial, and subject to Confrontation Clause requirements. I also agree that the admission of the letter without the testimony of the technician who administered the test violated defendant's Sixth Amendment rights and that the error was not harmless. Given this conclusion, I find that any discussion of the testimony of Dr. Vigen is dicta.

SUPREME COURT OF LOUISIANA

NO. 2014-K-2260

CONSOLIDATED WITH

NO. 2014-KO-2310

STATE OF LOUISIANA

VERSUS

VERNON MULLINS

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF SABINE

**GUIDRY, J., dissents and assigns reasons.**

I disagree with the majority's conclusion that the district court's ruling allowing introduction of the letter in evidence constituted reversible error. The majority opinion states: "Because Defendant failed to contemporaneously object to Dr. Vigen's testimony as to the victim's IQ score, Defendant failed to preserve any error as to his testimony, whether as to hearsay or to confrontation." Slip op., p. 9. Even if the defense's objection to Dr. Vigen's letter should have been sustained by the trial court, as the majority finds, the contents of the letter were merely cumulative when compared to the substance of Dr. Vigen's direct testimony. Accordingly, I disagree with the majority's reasoning as to why introduction of the letter was not harmless. The majority stresses the importance of the contents of the letter, which was written by Dr. Vigen, as containing all of the test results, including the scores of the sub-tests, and finds these additional scores bolstered the credibility of Dr Vigen. But the IQ test result itself, which pertained to an essential element of the charged offense, was set forth in the letter, and that result had already been introduced in evidence by virtue of Dr. Vigen's testimony, which is otherwise substantive evidence. Furthermore, Dr. Vigen had previously informed

1

the jury that his neuropsychological technician had administered and graded the test, so the letter's ostensible revelation that someone other than Dr. Vigen had administered the test is simply redundant. In my view, the majority opinion correctly found the defendant had failed to preserve any error as to Dr. Vigen's testimony; consequently, introduction of the letter on which his testimony was based, even if error on the part of the trial court, was harmless because its contents were merely cumulative evidence of the victim's IQ.

01/27/2016

SUPREME COURT OF LOUISIANA

NO. 2014-K-2260

CONSOLIDATED WITH

NO. 2014-KO-2310

STATE OF LOUISIANA

VERSUS

VERNON MULLINS

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF SABINE

**CRICHTON, J., concurs in the result and assigns reasons**:

I concur in the result and write separately to express my disappointment and bewilderment at the attorneys involved in this major felony case, one which, upon conviction, carries an automatic and mandatory life sentence. For reasons known only to the prosecutor, there was no effort to call the technician who administered the IQ examination. And, notwithstanding whether it would have satisfied the confrontation issue, the prosecutor also declined to call the other technician who re-checked the test scores. Instead, she sought to establish the critical element of mental infirmity—an intelligence quotient of 70 or lower—from another witness who had no direct knowledge whatsoever of the testing procedure and methodology in this case. Equally disappointing and astounding is the fact that defense counsel, for reasons known only to him, delayed lodging what should have been a contemporaneous objection, though finally (and fatal to the prosecution's case) doing so prior to the close of the inadmissible testimony. Because of the clearly testimonial and substantive nature of this critical evidence, the defendant, facing this mandatory life imprisonment sentence upon conviction, had zero opportunity to exercise his fundamental constitutional right to confront and cross

examine the evidence establishing his guilt.  Had defense counsel not finally lodged an objection, this case might have passed appellate muster; however, in my view, the error is of sufficient magnitude such that it would arguably have led to a finding of ineffective assistance of counsel upon collateral review.  The bottom line is that, especially in a case which results in a mandatory sentence for the defendant and one involving a developmentally disabled and vulnerable victim (who must testify again), the efficient administration of criminal justice and the integrity of our system demands more.