STATE OF LOUISIANA       *       NO. 2023-KA-0771

VERSUS       *

      COURT OF APPEAL

MICHAEL R. SHORTS, JR.       *

      FOURTH CIRCUIT

      *

      STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 549-715, SECTION "A"
Honorable Simone A. Levine,
* * * * * *
**Chief Judge Roland L. Belsome**
* * * * * *

(Court composed of Chief Judge Roland L. Belsome, Judge Rosemary Ledet, Judge Dale N. Atkins)

**LEDET, J., CONCURS IN THE RESULT.**
**ATKINS, J., CONCURS IN THE RESULT.**

Jason R. Williams
District Attorney
Parish of Orleans
Brad Scott
Chief of Appeals
Zachary M. Phillips
Assistant District Attorney
DISTRICT ATTORNEY'S OFFICE
619 South White Street
New Orleans, LA 70119

COUNSEL FOR STATE OF LOUISIANA/APPELLEE

Christopher J. Murell
Meghan K. Matt
MURELL LAW FIRM
2831 St. Claude Avenue
New Orleans, LA 70117

COUNSEL FOR DEFENDANT/APPELLANT

*ON REMAND—TRIAL COURT JUDGMENT AFFIRMED*
*JANUARY 15, 2026*

RLB

This case comes to us on remand from the Louisiana Supreme Court. Our original opinion,[1] affirmed the judgment of the trial court and the jury verdict that found Michael Shorts, Jr. ("Shorts") guilty of second-degree murder and obstruction of justice. The Supreme Court granted Shorts' writ application[2] and remanded the case to us with an instruction to evaluate Shorts' constitutional confrontation clause challenges. After further evaluation, which is elucidated below, we confirm our original opinion upholding Shorts' convictions.

***The constitutional analysis***

At trial, a detective testified about the information on which he relied to obtain an arrest warrant. Included in the information the detective described are statements made by family members. As we observed in our original opinion, the record reflects that defense counsel did not object to statements by the family on the basis of hearsay or violation of Defendant's right to confront the witness. In making this assessment, we review the following portion of the transcript:

---

[1] Found at *State v. Shorts*, 2023-0771 (La. App. 4 Cir. 5/8/25), ---So.3d---, 2025 WL 1341537*4, writ granted and remanded, 25-0735 (La. 12/16/25).
[2] The Supreme Court's writ disposition is found at *State v. Shorts*, 25-0735 (La. 12/16/25), ---So.3d ----, 2025 WL 3640153.

1

Q. On January 31st, knowing everything that you did, having talked to all the witnesses that you did, the evidence that you had, did you feel that you had enough to execute an arrest warrant for Mr. Shorts?

A. Yes. Based on the *numerous statements from Mr. Shorts' family in the first couple of days when they were still cooperating with the investigation, advising that Mike Mike did it.* Identifying Mike Mike as Mr. Shorts, as well as him matching the physical description of the subject walking away from the scene. Put that with the facts that we located the gun box. That we were able to identify Michael Shorts as the purchaser of that gun in 2017. As well as the live rounds that were located at Mr. Shorts' house matching the make and model of the live rounds located inside the pillow case. Based on my experience, that would have definitely been enough probable cause for the arrest warrant.

MR. FULLER: I'm going to ask the Court to *admonish the witness.* The Court specifically sustained an *objection to hearsay relative to when and where the gun was bought.* And he still got it out despite Your Honor sustaining the objection.

THE COURT: Sustained.

MR. LADD: Do you want me to re ask the question and he can answer?

THE COURT: It's your witness. You control your witness with an answer by asking the question that doesn't call for hearsay.
BY MR. LADD:
Q. Without mentioning anything about the gun or where it might have came from, based on the evidence that you had, did you feel that you could have put forth an affidavit for an arrest warrant for the defendant's arrest?

A. Yes, sir. Based on the previous things. The witness statements as well as the physical evidence, the live round matching the spent shell casings on the pillow case and the box matching the make and model of the gun, the gun box that had the same caliber as the rounds that were fired. As well as the numerous statements from the family advising that he was the perpetrator of the incident, that would have been enough for an affidavit for an arrest at the time.

. . .

Q. In terms of Mr. Eugene,[3] you would agree that on the scene, he tells an officer that he doesn't know, and I'm paraphrasing, either he says, I don't know who shot Mr. Varnado or I didn't see it. You would agree with that?

A. He said he did not see it, but he says Mike Mike did it.

Q. So you would agree?

---

[3] "Mr. Eugene" is Defendant's grandfather and the victim's stepfather.

A. I agree that he said that he did not see Michael Short shoot him. I agree.

Q. You are saying that on the scene, your testimony to the members of the jury is that on the scene, Mr. Eugene says, I didn't see who did it, but Mike Mike did it?

A. He says Mike Mike did it, and I asked him how did he know that, and he said based on the fact that Mike Mike was the only one outside at the time when the shooting occurred. I asked him to elaborate on that. He said he was out there and now he is no longer there.

Trial testimony, June 28, 2002, p. 154.

As can be seen from the transcript, defense counsel raised no objection to the repetition of statements made by Defendant's family members. This portion of the transcript captures the first time that any reference was made to statements from Defendants' family. Later in the trial, references were made to these statements. The references continued even into the State's closing argument. A thorough review of the entire trial transcript shows that the defense did not object to any reference to out-of-court statements by Defendant's family members. These are the statements that form the basis of Defendant's claim of error.

We noted in our original opinion that, "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." La. C. Cr. P. art. 841. This is the basis on many years of undisputed law that holds that an objection not raised contemporaneously at trial is waived and may not be the basis for relief on appeal.

The doctrine of waiver applies equally to the hearsay exception and the constitutional right to confront witnesses. This issue has been addressed by our Supreme Court, which held that an appellate court "erred to the extent it extended the principle originating in *Williamson* to reach an unobjected-to confrontation violation and applied what amounts to a "plain error" rule to relieve the defendant

from the necessity of contemporaneously objecting to a claimed confrontation violation." *State v. Vallo*, 2013-1369, p. 4 (La. 1/10/14), 131 So. 3d 835, 837. In *Vallo*, the victim refused to answer questions on cross examination. The trial court considered the victim an unavailable witness and admitted into evidence a recorded forensic interview. Defense counsel did not object to the introduction of the recorded testimony during the course of the trial. In its opinion, the Supreme Court emphasized that Louisiana has not adopted an equivalent to the federal "plain error" rule that would permit appellate review of a trial court error when no contemporaneous objection was made. With regard to the constitutional right to confront and its intersection with evidentiary rules of hearsay, the court wrote:

> "*Williamson* has never been applied in the context of a claimed confrontation violation. Notably, confrontation violations are subject to harmless-error analysis, *see, e.g., Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986); *United States v. Stalnaker,* 571 F.3d 428, 434 (5th Cir.2009), and several state courts have found confrontation violation claims waived by lack of contemporaneous objection.

*Vallo*, at 2013-1369 at p. 3, 131 So. 3d at 836.

More recently, our court has ruled that an objection to a statement on the basis of hearsay does not preserve the right to appeal that same statement on constitutional grounds. *State v. Stewart,* 2024-0454 (La. App. 4 Cir. 5/14/25), __ So. 3d __,__. This holding is consistent with La. C. Cr. P. art. 841(A) and the decisions of other Louisiana appellate courts. *See e.g.*, *State v. Harris*, 2019-1610 (La. App. 1 Cir. 9/3/20); *State v. Sly, 23-60 (La. App. 5 Cir. 11/2/23), 376 So. 3d 1047, writ denied, 2023-01588 (La. 4/23/24), 383 So. 3d 608*; and *State v. Chenier*, 2024-457 (La. App. 3 Cir. 10/1/25), 420 So. 3d 1208.

### *Constitutional analysis*

In our original opinion, we held that the detective's statements were not hearsay because they were statements made to explain the course of an ongoing investigation and were not offered to prove the truth of the statements made. The other instances in which the statements appeared in the trial record were all references to the detective's statements. The Supreme Court's instruction in its writ calls upon us to fully analyze the constitutional implications of the hearsay statements and we do so below.

In *State v. Mullins,* 2014-2260 (La. 1/27/16), 188 So. 3d 164, the Supreme Court held that even if a defendant fails to object to the erroneous admission of a hearsay testimonial statement on constitutional grounds,[4] a court must determine whether the erroneous admission is harmless error:

> Confrontation Clause violations do not fit within the limited category of constitutional errors that are deemed prejudicial in every case—the violation of a defendant's right to confrontation may be harmless error. *Delaware v. Van Arsdall,* 475 U.S. 673, 682, 106 S.Ct. 1431, 1437, 89 L.Ed.2d 674 (1986); *State v. Welch,* 1999–1283 (La.4/11/00), 760 So.2d 317, 321–22. Courts analyze such errors by assuming that the damaging potential of the error was fully realized, then asking whether the reviewing court could conclude that the error was nevertheless harmless beyond a reasonable doubt. *Welch,* 760 So.2d at 321–22.

*State v. Mullins*, 2014-2260, p. 9 (La. 1/27/16), 188 So. 3d 164, 171.

In Mullins, *id.*, the court restated the factors to be considered in determining whether an admission is harmless from a constitutional standpoint. The factors include: (1) the importance of the testimony; (2) whether the testimony is cumulative; (3) presentation of corroborating or contradicting testimony; (4) presence or absence of evidence; (5) the extent of the cross-examination permitted;

---

[4] Although we held that the admission of the hearsay statements were not erroneous, we will analyze them here as if they were to ensure compliance with the Supreme Court's instruction.

and (6) the overall strength of the state's case.  Our analysis of these factors follows.

### 1.  *Importance of the testimony*

The testimony in this case is of low importance because of the quantity of physical and testimonial evidence supporting the conviction.  It merely presented to the jury the logical reason for the direction and next steps in the investigation.  The statement by Mr. Eugene was an opinion and the jury was made aware, in testimony and in closing by defense counsel, that Mr. Eugene did not see the shooting in question.

### 2.  *Cumulative nature of testimony*

The detective's testimony is not cumulative.  There was no other testimony to explain the reasons for the direction taken in the investigation nor was there other testimony regarding the opinions and observations of Defendant's family.

### 3.  *Corroborative or contradictory testimony*

There was significant corroborative testimony by neighbors who witnessed the perpetrator walking away from the scene of the crime.  These witnesses described the perpetrator and significant actions taken by him.  Those include testimony describing the perpetrator, his clothing and most importantly, the fact that he carried a "white bag"[5] that he dropped into a trash can.  These information points would, in all likelihood, have led to the eventual discovery of Defendant as a suspect in the commission of the crime.  There was no contradictory evidence presented at trial.  To the contrary, Defendant himself admitted his presence at the crime scene at or near the time of the shooting.

### 4.  *Presence of evidence*

---

[5] The "white bag" was later identified by police as a pillowcase.

In our original opinion, we outlined other robust evidence available for consideration by the jury:

> In this case, footage from the real-time crime center camera captured an individual matching witnesses' description leaving the vicinity on foot almost immediately after 911 calls were placed reporting the shooting. Mr. Shorts himself admitted to being at his grandfather's house shortly before the shooting occurred. Also, DNA evidence established that Mr. Shorts could not be excluded as a major contributor to DNA found on the unstained portion of the pillow case discarded by the shooter, a fact that corroborates his presence on the scene. That same pillow and pillowcase, recovered from a nearby garbage container, contained blood stains that DNA testing determined originated from the victim, and was found alongside spent shell casings from a nine-millimeter firearm. Additional physical evidence also tied Mr. Shorts to the shooting including an empty nine-millimeter magazine recovered from his residence and a gun box that came from the gun store where Mr. Shorts had purchased a nine-millimeter firearm.

2023-0771 at p. 12, ---So.3d---, *4

### 5. *The extent of cross examination permitted*

The declarant in this case, Mr. Eugene, was not available for cross examination at trial. It is not clear from the record whether he was subpoenaed to attend. However, the record discloses two important factors regarding Defendant's ability to obtain contradictory information from this witness. First, the witness is a blood relative of Defendant with whom Defendant was sharing a home. Second, the record reveals that the declarant made the statement to the detective readily and appeared willing to share more information until another relative instructed the declarant to stop speaking to the detective. From that point until trial, all cooperation by the declarant stopped. One should reasonably infer that the discontinuance of cooperation by the declarant was for Defendant's benefit.

### 6. *Overall strength of the state's case*

7

As demonstrated above in response to analytical element 4, there is an abundance of other evidence on which the jury could and should have reached the same verdict.

As set forth in *Delaware v. Van Arsdall,* 475 U.S. 673, 682, 106 S.Ct. 1431, 1437 (1986),[6] the test for determining whether an error is harmless is "whether the reviewing court could conclude that the error was nevertheless harmless beyond a reasonable doubt." We hold again that the evidence considered in its totality, even without the statement of Defendant's grandfather, was sufficient to convict beyond a reasonable doubt and was therefore, harmless error.

### *Conclusion*

In this case, Defendant failed to object contemporaneously, on the basis of hearsay or the constitutional right to confront witnesses, to the testimony he challenges here. We held in our original opinion that the admission of the detective's testimony was not error, but that, in any event, if it was error, it was harmless error. For the reasons stated in our original opinion and based on the analysis above, we confirm our holding affirming the judgment of the trial court and the verdict of the jury.

*ON REMAND—TRIAL COURT JUDGMENT AFFIRMED*

---

[6] Our Supreme Court adopted the same test in *State v. Welch*, 1999–1283 (La.4/11/00), 760 So.2d 317, 321–22.